**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **NEMESIO CASTRO,** | § | |
| **on behalf of plaintiff and all** | § | |
| **others similarly situated,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Cause No. EP08CA0215** |
| | § | **Judge Montalvo** |
| | § | |
| **COLLECTO, INC., doing business as** | § | |
| **COLLECTION COMPANY OF** | § | |
| **AMERICA, and** | § | |
| **US ASSET MANAGEMENT INC.,** | § | |
| | § | |
| **Defendants.** | § | |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY**

     **COMES NOW**, Plaintiff NEMESIO CASTRO ("Castro"), on behalf of the certified

class, and pursuant to Federal Rule of Civil Procedure 56, respectfully requests this Honorable

Court to enter Summary Judgment as to Liability against defendants COLLECTO, INC., d/b/a

COLLECTION COMPANY OF AMERICA ("Collecto") and U.S. ASSET MANAGEMENT,

INC. ("U.S. Asset").  Plaintiff would show the court the following:

**I.**     **INTRODUCTION**

     Plaintiff filed the instant class action Complaint on June 18, 2008.  Plaintiff contends that

defendants have violated the Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. § 1692e,

1692e(5), 1692e(10) and 1692f by threatening suit on time-barred debts.

     On March 4, 2009, this Court granted Plaintiff's Motion for Class Certification (D.E.

#44), certifying a class consisting of all individuals with Texas Addresses who were sent a letter

in the form represented by <u>Exhibit A</u> to Plaintiff's Complaint, seeking to collect a cellular telephone debt which became delinquent more than two years prior to the sending of the letter in the form represented by <u>Exhibit A</u> to Plaintiff's Complaint, which letter was sent between June 16, 2007 and July 6, 2008.

## II.    STATEMENT OF FACTS

Plaintiff is an individual who resides in El Paso, Texas.  (Plaintiff's Complaint ("P's Comp."), D.E. #1, par. 4).  Defendant Collecto is a Massachusetts corporation that does business in Texas.  (P's Comp. par. 5).  Collecto is in the business of collecting debts owed to others, using the mails and telephones for that purpose, and is a "debt collector" as defined in the FDCPA.  (Defendants' Answer and Affirmative Defenses to Plaintiff's Original Complaint, ("D's Answer"), D.E. #9, par. 6-7).

Defendant U.S. Asset is a Delaware corporation doing business in Texas.  (D's Answer, par. 8).  U.S. Asset purchases and attempts to collect defaulted debts originally owed to others, and regularly purchases defaulted telecommunication debt.  (Deposition of John F. Burns ("Burns Dep") 5:6-7; 89;15-22, attached hereto as <u>Exhibit 1</u>).  Collecto owns the stock of U.S. Asset, and the two entities share common management.  (*Id*. at 4:18-5:17).  Collecto regularly collects debts on behalf of U.S. Asset, and all the relevant actions of Collecto in this matter were performed on behalf of U.S. Asset.  (Defendants' Answer to Second Discovery Requests ("Def. Ans. to 2nd Disc. Req's") at par. I(5), II(2), (3),  attached hereto as <u>Exhibit 2</u>).

Collecto sought to collect from Castro an alleged cellular telephone debt originally owed to Sprint PCS, and now allegedly owed to U.S. Asset.  (Def. Answer at par. 13; Def. Ans. to 2nd Disc. Req's at par. I(5)).  On May 14, 2008, Collecto sent to Plaintiff the form letter attached as

<u>Exhibit 3</u> on behalf of U.S. Asset.  (Def. Ans. to 2nd Disc. Req's at par. I(6)).  <u>Exhibit 3</u> references the Sprint PCS debt and states in part:

> We wish to advise you that our client [U.S. Asset] has authorized CCA to place your account with an attorney in your area for collection and/or legal action in our client's name.
>
> ...
>
> Upon review of your account, if you are sued by the attorney, you may incur additional court costs which could substantially increase your outstanding balance.

On June 4, 2008, Collecto sent to Plaintiff the form letter attached as <u>Exhibit 4</u> on behalf of U.S. Asset.  (Def. Ans. to 2nd Disc. Req's at par. I(7)).  <u>Exhibit 4</u> also references the Sprint PCS debt and states in part:

> We have verified assets in your name, including ownership of the property in which you reside, and the assessed value.  Our client may use this information in evaluating further collection activity on this account.  Send the full balance due today and avoid further collection activity by our client.

At the time the letters were sent to Castro, more than three years and three months had elapsed from the time Defendants' records indicated the debt had been charged off.  (See Deposition of Susan P. Giordano ("Giordano Dep.") at 27:11-19, attached hereto as <u>Exhibit 5</u>; Deposition of Candice O'Brien ("O'Brien Dep." at 46:20-47:8, attached hereto as <u>Exhibit 6</u>). Though Defendants have not yet disclosed the exact number of class members, Defendants conceded that there are at least enough individuals with Texas Addresses who were sent a letter in the form represented by <u>Exhibit A</u> to Plaintiff's Complaint, seeking to collect a cellular telephone debt which became delinquent more than two years prior to the sending of the letter in the form represented by <u>Exhibit A</u> to Plaintiff's Complaint, and were thus subject to the same violations as Castro, to support the requirement of numerosity during the class briefing process.

John F. Burns, who is both the Vice President of Corporate Services for Collecto and Vice President of U.S. Asset, was involved in drafting, authorizing, and approving the use of collection letters in the form of <u>Exhibits 3</u> and <u>4</u>.) Burns Dep. at 4:18-23; Def. Ans. to 2nd Disc. Req's at par II(5)).

## III.   LEGAL STANDARD

### A.   Summary Judgment.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  A summary judgment, interlocutory in character, may be rendered on the issue of liability alone, although there is a genuine issue as to the amount of damages.

The entry of summary judgment is appropriate where there exists no genuine and material issue of fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2509-10, 91 L. Ed. 2d 202 (1986).  Substantive law defines which facts are material and only disputes over facts that might affect the outcome of the case will defeat summary judgment.  *Id.* at 248, 106 S. Ct. at 2510.  A factual dispute is genuine if a "reasonable jury could return a verdict for the non-moving party."  *Id.*  Although all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party, once the movant has met its burden of demonstrating the absence of a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts" to prevent its entry.  *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 547, 586-87, 106 S. Ct. 1348, 1355-56, 89 L. Ed. 2d 538 (1986).  It is not

sufficient for the party opposing summary judgment to provide a scintilla of evidence supporting

its case.  *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512.

> **B.      Fair Debt Collection Practices Act.**

In enacting the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA"),

Congress recognized the  --

> universal agreement among scholars, law enforcement officials, and even
> debt collectors that the number of persons who willfully refuse to pay just
> debts is minuscule [sic].  .  .  .   [T]he vast majority of consumers who obtain
> credit fully intend to repay their debts.  When default occurs, it is nearly
> always due to an unforeseen event such as unemployment, overextension,
> serious illness, or marital difficulties or divorce.

S. Rep. No. 382, 95th Cong., 1st Sess. 3 (1977), *reprinted in* 1977 USCCAN 1695, 1697. The

FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt

collectors."15 U.S.C. §1692(e). The Act is designed to protect consumers from unscrupulous

collectors, whether or not there is a valid debt. *McCartney v. First City Bank*, 970 F.2d 45, 47

(5th Cir. 1992)*; Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997); *Keele v. Wexler*, 149

F.3d 589, 594 (7th Cir. 1998); *Baker v. G.C. Services Corp.*, 677 F.2d 775, 777 (9th Cir. 1982).

The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which

harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements, in

connection with the collection of a debt. The Act also requires debt collectors to give debtors

certain information. 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§1601 et seq., the

FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot*

*v. Diversified Fin. Services, Inc.*, 839 F.Supp. 941 (D. Conn. 1993).

> The [Consumer Credit Protection] Act is remedial in nature, designed to
> remedy what Congressional hearings revealed to be unscrupulous and
> predatory creditor practices throughout the nation.   Since the statute is

> remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

*N.C. Freed Co. v. Board of Governors*, 473 F.2d 1210, 1214 (2nd Cir. 1973). Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir.1997).

The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies expressed therein. *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 666  (7th Cir. 2001); *Baker*, 677 F.2d at 780; *Whatley v. Universal Collection Bureau*, 525 F. Supp. 1204, 1206 (N.D. Ga. 1981). "Congress intended the Act to be enforced primarily by consumers . . . ." *FTC v. Shaffner*, 626 F.2d 32, 35 (7th Cir. 1980). "Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive debt collection practices, and courts are not at liberty to excuse violations where the language of the statute clearly comprehends them . . . ." *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2nd Cir. 1989).

Whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of the "least sophisticated consumer" or the "unsophisticated consumer." *Goswami v. Am. Collections Enter.*, 377 F.3d 488, 495 (5th Cir. 2004)  "The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd."  *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993).

Plaintiff need not prove intent, bad faith or negligence in an FDCPA case. The "FDCPA is a strict liability statute," and "proof of one violation is sufficient to support summary judgment for the plaintiff." *Cacace v. Lucas,* 775 F. Supp. at 505; *See also Stojanovski v. Strobl and Manoogian, P.C.*, 783 F. Supp. 319, 323 (E.D. Mich. 1992); *Riveria v. MAB Collections, Inc.*, 682 F. Supp. 174, 178-79 (W.D.N.Y. 1988).  "Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages."

*Russell v. Equifax A.R.S.*, 74 F.3d at 33.  *See also, Bentley v. Great Lakes Collection Bureau*, 6 F.3d at 62; *Clomon v. Jackson*, 988 F.2d at 1318.  Furthermore, the question of whether the consumer owes the alleged debt has no bearing on a suit brought pursuant to the FDCPA. *McCartney v. First City Bank*, 970 F.2d 45 (5th Cir. 1992); *Baker v. G.C. Services Corp.*, 677 F.2d 775, 777 (9th Cir. 1982).

**IV.    ANY ATTEMPT TO COLLECT AMOUNTS DUE FOR FEDERALLY-REGULATED TELECOMMUNICATIONS SERVICES IS CONTROLLED BY THE STATUTE OF LIMITATIONS IN THE FEDERAL COMMUNICATIONS ACT**

The language of the Federal Communications Act ("FCA") 47 U.S.C. §415(a) is plain and unambiguous:

> **Limitations of actions**
>
> **(a) Recovery of charges by carrier. All actions at law by carriers for recovery of their lawful charges, or any part thereof, shall be begun, within two years from the time the cause of action accrues, and not after.**

With respect to all charges for communications to which the FCA applies, the plain language of §415 controls with respect to the statute of limitations.  "We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.  When the words of a statute are unambiguous, then this first canon is also the last: 'judicial inquiry is complete.'"  *Connecticut Nat. Bk. v. Germain*, 503 U.S. 249, 253-54 (1992).

In its Order Granting Class Plaintiff's Motion for Class Certification (D.E. #44), this Court recognized that:

> Defendants' argument that a four-year statute of limitations period applies here fails as a matter of law...The express language of section 415 preempts any state statute of limitation period for legal actions for carriers.

Section 415 states: '*all actions at law* by carriers for recovery of their lawful charges, or any part thereof, shall be begun *within two years* from the time the cause of action accrues, and not after.'  Congress could not have been clearer.  To suggest a carrier could otherwise assign its contract to a third-party debt collector to bypass the requirements of section 415 and bring a state action pursuant to a four-year statute of limitations period, would undermine the express language and purpose of the statute.  Therefore, the clear language of section 415 states a two-year statute of limitations applies.

As this Court has recognized, there is an obvious need for a uniform federal statute of limitations for interstate telecommunications charges because any claim concerning interstate communications, either by or against the carrier, necessarily has a jurisdictional nexus with at least two states.  Congress included §415(a) in the FCA to preempt the hodge-podge of different state statutes of limitations and to prevent forum-shopping and pointless litigation over the applicable law.  Section 415(a) reflects Congress's desire to impose a uniform short period (now two years, originally one year) for claims by and against telecommunications carriers and avoid discrimination based on locality.

## V.       DEFENDANTS THREATENED SUIT ON A TIME-BARRED DEBT

All actions by carriers or their assignees to collect federally regulated telecommunication debt must be begun within two years of the time the cause of action accrues, or the debt is time-barred.  At the time Collecto sent Exhibits 3 and 4 on behalf of U.S. Asset to collect on the cellular telephone debt originally owed to Sprint PCS, more than three years had passed since the debt became delinquent.  See Giordano Dep. at 27:11-19; O'Brien Dep. at 46:20-47:8.

Collecto's threat on behalf of U.S. Asset of "legal action" and "additional court costs which could substantially increase your outstanding balance" contained in Exhibit 3, can only reasonably be  interpreted as a threat to file a lawsuit against Castro.  This threat of suit is reinforced by the language contained in Exhibit 4 referencing Defendants having "verified assets in [Castro's] name, including ownership of the property in which [he] reside[s], and the assessed

value" because the most obvious purpose of verifying assets is to seize them pursuant to a judgment.

A reasonable consumer, let alone an unsophisticated consumer, would interpret Defendants' letters as a threat of suit.  See *Drennan v. Van Ru Credit Corp.*, 950 F.Supp. 858m 860 (N.D. Il. 1996) ("To the archetypical person whom Congress sought to protect by the [FDCPA, the defendant's letter] had to appear as an ominous harbinger of things to come unless the addressee complied the directive of what had to be done[.]"); See also *Arellano v. Etan Industries, Inc.*, No. 97 CV 8512, 1998 U.S. Dist. LEXIS 20279 at *12 (N.D. Il., Dec. 14, 1998) ("A threat to recommend referral to an attorney is an implicit threat to sue.").  As the Federal Trade Commission has recognized in its 1988 Staff Commentary on the FDCPA, "A debt collector's implication, as well as a direct statement, of planned legal action may be an unlawful deception.  For example, reference to an attorney or to legal proceedings may mislead the debtor as to the likelihood or imminence of legal action."  *Federal Trade Comm'n, Statement of General Policy or Interpretation Staff Commentary on the Fair Credit Reporting Act*, 53 Fed. Reg. 50097 50106 (Dec. 13, 1988).

## VI.    DEFENDANTS' ACTIONS VIOLATED THE FDCPA

Defendants' threat of lawsuit was both a deceptive means to collect or attempt to collect a debt in violation of § 1692e(10) and an unfair means to collect the debt in violation of § 1692f because it counted on Mr. Castro not to recognize that the statute of limitations had expired. *Kimber v. Federal Fin. Corp.*, 668 F.Supp. 1480 (M.D. Ala. 1987); *Baptist v. Global Holding & Inv. Co.,* 04-CV-2365 (DGT), 2007 U.S. Dist. LEXIS 49476 (E.D.N.Y., July 9, 2007); *Goins v. JBC & Assocs., P.C.,* 352 F. Supp. 2d 262, 272 (D. Conn. 2005); *Stepney v. Outsourcing*

*Solutions,* 97 C 5288, 1997 U.S. Dist. LEXIS 18264, 1997 WL 722972, at *5 (N.D.Ill. Nov. 13, 1997).

In *Kimber v. Federal Financial Corp.*, 668 F. Supp. 1480 (M.D. Ala. 1987), the leading case, the court held that the defendant violated § 1692e and f by filing suit on a time barred debt. The court concluded that filing suit or "threatening" to file suit on time barred debts is deceptive and in violation of §1692e(2)(A) & (10). *Kimber* at 1489.  The court further held that filing suit to collect on a time-barred debt "constitute[d] an unfair and unconscionable practice offensive to §1692f ." *Kimber* at 1487.

The FDCPA was enacted to protect consumers, particularly the least sophisticated consumer, from the unscrupulous practices of debt collectors.  Filing time-barred lawsuits is especially egregious as "few unsophisticated consumers would be aware that a statute of limitations could be used to defend against lawsuits based on stale debts, such consumers would unwittingly acquiesce to such lawsuits."  The *Kimber* court further elaborated "even if the consumer realizes that she can use time as a defense, she will more than likely still give in rather than fight the lawsuit because she must still expend energy and resources[.]"  *Id.*

## VII.   U.S. ASSET IS LIABLE FOR THE COLLECTION ACTIVITIES PERFORMED ON ITS BEHALF BY COLLECTO

U.S. Asset is a "debt collector" for purposes of the FDCPA and subject to its requirements.  A company that regularly purchases delinquent debts is a "debt collector" within the meaning of the FDCPA with respect to the delinquent debts.  *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534 (7th Cir. 2003); *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496 (7th Cir. 2008); *FTC v. Check Investors, Inc.*, 502 F.3d 159 (3d Cir. 2007); *Pollice v. Nat'l Tax Funding*, 225 F.3d 379 (3d Cir. 2000); *Ballard v. Equifax Check Services*, 27 F.Supp.2d 1201 (E.D. Cal. 1998); *Farber v. NP Funding II, LP*, 96 CV 4322, 1997 U.S. Dist. LEXIS 21245 *11 (E.D.N.Y.

Dec. 9, 1997) ( "Those who are assigned a defaulted debt are not exempt from the FDCPA if their principal purpose is the collection of debts or if they regularly engage in debt collection").

As a debt collector, U.S. Asset is liable both vicariously and directly for the collection activities performed on its behalf by Collecto.  "[N]umerous courts utilize agency principles to make a principal vicariously liable for the acts of his authorized or apparent agent under the FDCPA."  *Alger v. Ganick, O'Brien & Sarin*, 35 F.Supp. 2d 148, 153 (D. Mass. 1999); accord, *Pettit v. Retrieval Masters*, 211 F.3d 1057, 1059 (7th Cir. 2000) ("Although there is relatively little case law on the subject of vicarious liability under the FDCPA, there are cases supporting the notion that an entity which itself meets the definition of 'debt collector' may be held vicariously liable for unlawful collection activities carried out by another on its behalf.  In *Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507 (9th Cir**.** 1994), the court indicated that a company which had been asked to collect a defaulted debt could be held vicariously liable for its attorney's conduct which was in violation of the FDCPA.  See *Id.* at 1516."); *Martinez v. Albuquerque Collection Servs.*, 867 F.Supp. 1495, 1502 (D.N.M. 1994) ("Debt collectors employing attorneys or other agents to carry out debt collection practices that violate the FDCPA are vicariously liable for their agent's conduct.").

Moreover, because Collecto owns U.S. Asset and they have common management, liability is not only vicarious.  John F. Burns, who was an officer of both U.S. Asset and Collecto, approved the use of use of Exhibits 3 and 4 for use to collect the telecommunications debt at issue.  See Def. Ans. to 2nd Disc. Req's at par. II(5).

## VIII.   DEFENDANTS ARE NOT ENTITLED TO A BONA FIDE ERROR DEFENSE

The bona fide error defense, 15 U.S.C. § 1692(c), requires that the debt collector show by a preponderance of evidence that "the violation was not intentional and resulted from a bona fide

error notwithstanding the maintenance of procedures reasonable adapted to avoid any such error." As the Ninth Circuit Court of Appeals has acknowledged in *Reichert v. Nat'l Credit Sys.*, 531 F.3d 1002 (9th Cir. 2008)*, "*[i]f the bona fide error defense is to have any meaning in the context of a strict liability statue, then a showing of 'procedures reasonably adapted to avoid any such error' must require more than a mere assertion to that effect." 531 F.3d 1002, 1007. Defendants cannot come close to meeting the burden of such a defense as a matter of law.

      A.      **Defendants Cannot Demonstrate any Reasonable Procedures to Avoid Threatening Suit on Time-Barred Telecommunications Debt**.

"As the text of § 1692(k) indicates, the procedures component of the bona fide error defense involves a two-step inquiry; first, whether the debt collector 'maintained'–*i.e.* actually employed or implemented–procedures to avoid errors; and second, whether the procedures where 'reasonably adapted' to avoid the specific error at issue." *Johnson v. Riddle*, 443 F.3d 723, 729 (10th Cir. 2006). Defendants have not provided any evidence that they maintained reasonable procedures adapted to avoid threatening suit on time-barred telecommunications collection lawsuits. The entirety of Defendants' purported compliance procedure is explained as "All letters and [*sic*] reviewed and approved by the Compliance department. All letters are checked for compliance with both federal and state law before any letters are utilized." Def. Resp. to P's 2nd Disc, Par. 10. This position fails because it is insufficient on its face to support a bona fide error defense, because it has nothing to do with whether the debts are out of the applicable statute of limitations, and because it is contradicted by Defendants' deposition testimony, which revealed that Defendants had no compliance procedure whatsoever regarding the complained of conduct.

**B.      Defendants Did Not Rely upon Any Legal Advice Regarding the Appropriate Statute of Limitations.**

A reasonable procedure to answer a question of law, such as the appropriate statute of limitation, requires an opinion from a lawyer. *Johnson*, 443 F.3d at 730.  Defendants have an affirmative duty to "seek and obtain competent legal advice from counsel." *Ortho Pharmaceutical Corp. v. Smith*, 959 F.2d 936 (Fed. Cir. 1992).  The assertion of a bona fide error defense requires the reliance "upon the advice of counsel after a full and truthful disclosure." *Hernon v. Revere Copper & Brass, Inc.*, 494 F.2d 705 (8th Cir. 1992).   In the absence of competent legal advice, reliance upon general trade industry publications does not constitute a bona fide error, particularly if those publications do not even discuss the specific issue of law. *Seeger v. AFNI, Inc.*, 548 F.3d 1107, 1114 (7th Cir. 2008) ("In the end, [defendant] is not arguing that it relied on an informed, but mistaken, legal opinion.  It is saying that its ignorance of the law should be excused because it attempted to keep itself informed about the law through the various trade association communications.  This is not enough, in our view, to support the bona fide error defense.").

Defendants have not only failed to produce any evidence of an opinion letter or analysis of the applicable law, but their testimony demonstrates that Defendants never *sought* any such advice from their in-house counsel or anyone else.   John Burns, Vice President of Corporate Services for Collecto, Inc. and Vice President of U.S. Asset Management Inc., testified as follows:

> Q:      Was any analysis of 47 USC Section 415(a) considered by anyone at Collecto prior to the mailing of [the letters at issue] for the purpose of collection telecommunications debt?
>
> A:      No.  (Burns Dep at 107:9-13)

Q:      But, again, focusing on the sending of Exhibit A and B to Exhibit 2 to debtors with telecommunications debt, you didn't have any attorney advice prior to the filing of this lawsuit in 2008, correct?

A:      Advice as to what?

Q:      As to what the statute of limitations was for telecommunication debt?

A:      No, the issue of telecom as one type of debt was never a separate and specific discussion apart from debt in general. (Burns Dep at 113:22-24-114:8).

Mr. Burns testimony is supported by that of Susan P. Giordano, Vice President of Risk Management and Compliance for Collecto, and Candice O'Brien, Vice President of Operations for Collecto.  Ms. Giordano testified:

Q:      And again, do you know whether this length of the Statute of Limitations at all was considered when you reviewed [the letter threatening suit]?

A:      No, it was not.  (Giordano Dep. at 27:20-23).

Ms. O'Brien further explained:

Q:      Did you have any discussions with any lawyer, other than [counsel in the present matter], about what the Statute of Limitations is for cellular phone debt in Texas?

A.      No, I have not.  (O'Brien Dep. at 63:16-19).

Defendants' failure to seek any legal advice regarding the appropriate statute of limitations for telecommunications debt is particularly noteworthy when considering that Collecto handles other types of debts whose statutes of limitations, are determined by federal as opposed to state statute.  Ms. O'Brien testified on behalf of U.S. Asset:

A:      I mean the type of debt does impact the strategy on the portfolio because you have medical accounts, you're going to have to follow HIPPA laws. And, you know if you have education loans...they have their own set of laws, whether it's a loan or tuition, and the time you have to keep the debt and transfer back.  So I guess the type of debt impacts the collection strategy.  (O'Brien dep. 28:15-24).

Pursuant to 20 U.S.C. § 1091a(a)(2)(D), debt held by the U.S. Department of Education and certain other entities are essentially free from state statutes of limitations. Collecto, which conducts collection activity regarding U.S. Department of Education debt, employs a separate department to handle this debt, and presumably takes full advantage of Congress' directive regarding the statute of limitations. It is not reasonable for Defendants to expect to enjoy the benefits of more permissive Federal statutes of limitations, but not be responsible for making even a cursory inquiry into the appropriate statute of limitations regarding telecommunication debt.

**C.      Defendants' Purported Reliance On the ACA Chart is not Reasonable.**

Rather than seeking legal advice regarding the appropriate statute of limitations for telecommunication debt, Defendants purport to have relied upon a "chart" attached hereto as Exhibit 7 provided by ACA International – The Association of Credit and Collection Professionals (hereinafter the "ACA chart") in determining that the four-year statute of limitations applied rather than the two year statute found in the FCA. Burns Dep. at 75:4-23. However, the first page of the ACA chart contains the following admonition to users:

> The applicability of statutes of limitation vary from state-to-state and from case to case depending on the cause of action in the lawsuit. We have listed a few general statutes of limitation here. They are provided for information only. **Check with your own attorney to determine which, if any, are applicable to a given action.** (emphasis original)

Additionally, the ACA chart ends with the following disclaimer:

> This information is not to be construed as legal advice. Legal advice must be tailored to the specific circumstances of each case. Every effort has been made to assure that this information is up-to-date as of the date of publication. It is not intended to be a full and exhaustive explanation of the law in any area. This information is not intended as legal advice and may not be used as legal advice. it should not be used to replace the advice of your own legal counsel.

Defendants' purported reliance on the ACA chart as the sole resource to determine questions of law such as the appropriate statute of limitation for telecommunication debt is not only insufficient to support a bona fide error defense, it is objectively unreasonable given the clear disclaimers made in the chart itself.  Even without the explicit disclaimers, the ACA chart does not satisfy the competency requirement for legal advice.  *TiVO Inc. v. EchoStar Comm. Corp.*, 2005 U.S. Dist. LEXIS 42481 (E.D. Tex. Sept. 26, 2005).

## IX.   CONCLUSION

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter summary judgment as to liability against defendants Collecto and U.S. Asset.

Respectfully Submitted,

s/Scott A. Vogelmeier
Scott A. Vogelmeier
LAW OFFICE OF SCOTT A.
VOGELMEIER
1112 Myrtle Avenue
El Paso, TX 79901
(915) 544-3100
(915) 577-0160 (fax)

James O. Latturner
EDELMAN,COMBS,
LATTURNER, & GOODWIN
120 South LaSalle Street, 18th Floor
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (fax)

## **CERTIFICATE OF SERVICE**

I, Scott A. Vogelmeier, hereby certify that on June16, 2009, I had the foregoing document filed via CM/ECF and served electronically upon the following:

Keith Wier (kwier@bushramirez.com)

s/Scott A. Vogelmeier
Scott A. Vogelmeier
